Mr. Soto's California amphetamine and methamphetamine conviction should not have counted as career offender predicates because California indivisibly graphs analogs into its definitions of amphetamine and methamphetamine, and it explicitly defines analogs more broadly than federal law. By my count, there are six major points of legal disagreement here. There's the intended for human consumption requirement. There's the partially conjunctive structure of the federal analog definition. There's this court's repeated holdings that realistic probability is met by facial textual overbreath. There is the indivisibility of California analogs from the controlled substances for which they are analogs. There's the inapplicability of the Rodriguez-Gamboa case, and there's the government's claim that United States v. Bautista has been effectively overruled. I'm happy to take those issues in any order the court likes, or I can just start in on issue one. All right, well, let me go right to a question I have. Assume for the sake of argument that on some of those points you're correct. I'm having trouble understanding why the modified categorical approach doesn't apply here, even if you're right on all the rest of your arguments. As I see it, the California Court of Appeal, for example, in Becker makes it clear that you have to specify the drug in the indictment or the complaint, that that has to be something the jury has to agree on. And here, the Shepard documents, to me at least, make clear that what your client was previously convicted of was absolutely named, and we've got methamphetamine in one and amphetamine in the other. So why doesn't the modified categorical approach work? Sorry for the not-short question. I appreciate knowing where the Court's thinking is. Because these are means and not elements, I think, respectfully, Your Honor, I read Becker the opposite to how you're reading Becker, which is I see in Becker a court saying the only charge in Becker is ecstasy, which at that point was an enlisted California substance. So it has that thing written in the charging document there had no legal meaning under the California drug statute, and didn't charge it as an analog, didn't charge it as a substance containing methamphetamine. But the court said, in reference in count five to ecstasy, fully apprised defendant that the prosecution was alleging and would seek to prove that ecstasy was a controlled substance for the purpose of the two sections. And I don't understand why that doesn't work for the argument the government is making if we were to get to that. Because it doesn't break it out between whether it's a controlled, in Becker there were two theories. The prosecution pursued two parallel theories. One was this ecstasy is methamphetamine because it contains methamphetamine. The other one was ecstasy is an analog of methamphetamine. And when the court says they didn't have to, when the court says no more needed to be in the charge, it's saying the charge didn't have to specify as between those two legal theories. Ginsburg. If it had been, they didn't say whether it was a controlled, whether it was a listed controlled substance or an analog. Right. But suppose the jury thought it was methamphetamine? The jury, the court, in its earlier ruling about sufficiency of evidence, they said it to determine that it was methamphetamine. There are two rulings in Becker. One was about the sufficiency of the evidence. The other was about the sufficiency of the charging document. And they're saying that, sorry? Sufficient to show that ecstasy is either a controlled substance or a controlled substance analog of methamphetamine. Right. But it didn't say that it was methamphetamine. So the question is whether if you allege that it's still be actually methamphetamine. I think so because ecstasy has no legal meaning in California at that time. Right? It's just a street name. It's not. It doesn't seem to be what Becker says when I read it. I mean, again, it's an unlisted substance. But the Becker court specifically said the prosecution was alleging and would seek to prove that ecstasy was a controlled substance. Right. But because it's not listed, the only way that it can prove that it's a controlled substance is by linking it to something that actually is a controlled substance. In that case, they chose to link it to methamphetamine, either as a substance containing methamphetamine or as a substance that is an analog of methamphetamine. And you also rely for this on the actual wording of the statute. I do. And I was just about to go there, Your Honor. The statute tells us very clearly that analogs are to be treated the same as and identical to the drugs for which they are analogs under the California drug statutes. So the question for divisibility is, are these separate crimes or are these different means of committing the same crime? What about people v. Davis? The Supreme Court discusses Becker. It's essentially the opposite of Becker, where they proved that the defendant had MDMA, but there was no expert testimony about what MDMA is and whether it is meth or an analog of meth.  And the Supreme Court said the prosecution didn't prove and said proof that MDMA qualifies as a controlled substance or analog is an element of the crimes set out in sections 11377 and 11379, which I think are parallel to 11378 as you hear. So then the way I read Davis, which is the California Supreme Court, as agreeing with Becker that proving MDMA is either a controlled substance or an analog is an alternate means of proving the element required in the crime. That's the same way I read it, Your Honor. And I have that same quote here in my notes. I was going to read it to you. It's an element. It's not they are alternate elements of different crimes or something like that. So, you know, again, going back to the statute, it's to treat it the same as or identical to it. You wouldn't be treating it identical to if you say that unlike, you know, methamphetamine, it's more like a crime of opium or heroin or some totally separate drug than just another variety of methamphetamine. I assume in California, the prosecution could choose to say we are going to prove it is actually the controlled substance, right? They could make a choice between those alternate means of proving the element, or they could say, we're not sure it's the same thing or an analog, but we'll have an expert say it's one or the other, and it doesn't matter which the jury decides as long as they agree it's one or the other. We've proven the element. But the prosecution, I assume, could choose either to narrow their theory to it's an analog or it's actually the controlled substance, or they can leave it to the jury. It wouldn't matter. And then they would, in that second scenario, the jury, it would not matter if the jury agreed that was, if half the jury said it's actually a meth and half the jury said it's an analog, it wouldn't matter for the purposes of the conviction. No, because it's a means. So, but if we disagreed with you, and if we found that the, that methamphetamine and ecstasy are not alternate means, but instead alternate elements of distinct crimes, possession of, for sale of methamphetamine and possession for sale of ecstasy, we would apply the modified categorical approach, yes? If they are elements and not means, then that invites you to the modified categorical approach. Right, modified categorical approach. And would you agree that if we were to get to the modified categorical approach for your client, the Shepard documents here are sufficient? Me, I read methamphetamine and amphetamine, and I don't know whether that means methamphetamine, it's salt, it's isomers, whatever. You know, I would agree that it's a harder case for us. And I have 20 seconds left. One last question, and we'll give us some time, won't we? Yes, I appreciate it. I don't know why this is a 10 minute case. The, to go back to the overbreath question, if we thought it was overbroad for one of your two reasons, namely that the definition of analog is broader, then do we need to get to the other one? No, my understanding is that one is enough. You just need overbreath. And if there's facial textual overbreath, that gets you your realistic probability. And you have to agree that it's a badly drafted statute in terms of the definition of analog under federal law.  It's a badly drafted statute. I think it is a badly drafted statute. I think we can all agree on that. I ultimately think I found the Third Circuit opinion persuasive, but it's not an easy question. It's certainly what I would have pointed the court to is the Hodge opinion. That's the deepest exploration of the text. And, you know, the other, what everyone's been assuming for years, and I think there's a reason every federal, you know, even if there's some discomfort with the wording of the statute, every federal court that's read it has come out that way. All right, we'll give you two minutes for rebuttal. I appreciate it, Your Honor. Good morning and may it please the court. Rajesh Srinivasan for the United States. I would like to start where you started, Judge Bennett, which is the modified categorical approach. I agree with your reading of Becker, but in addition to that, CalCrim 2302, the jury instruction, explicitly says to list whether you're charging, whether the jury needs to find a controlled substance or an analog. And we get to look at that. And under Shepard, you get to look at that and decide whether that shows that the statute is divisible. Moreover, CalCrim... Why do we get to look at that? The Supreme Court has said that when deciding whether a statute is divisible, sometimes it's obvious, and sometimes you need to look at charging documents and jury instructions, and you are allowed to do that. And in this case, it would be appropriate to look at CalCrim 2302 and notice that it's listed out as different elements. And as Taylor said, the real concern about the categorical approach is to make sure that the jury is actually finding the facts sufficient to constitute the federal definition. So if the jury is charged with finding methamphetamine, then the defendant has committed a controlled substance offense. And that is exactly what CalCrim 2302 tells the jury to be instructed of. In addition, CalCrim 11401 is a separate statute. It doesn't really make sense to read it as modifying the definition of methamphetamine, especially because all that statute is supposed to do, as Section 11400 makes clear, is make analogs equivalent for purposes of penalties and punishment. Is there any California case that says it modifies the first statute? Not that I'm aware of. Well, how do you deal with Davis? Sorry, excuse me. Go ahead. How do you deal with People v. Davis, then? Just California Supreme Court saying that proof that MDMA qualifies as a controlled substance or analog is an element of the crimes. One element. The way I read that is it's a sufficiency case. And proving either, those are alternate elements, and proving either one is sufficient to uphold a conviction. I don't necessarily read it as defining different means of the same element, particularly in light of the other evidence we have, including CalCrim 2302. And that's in your brief, right? Yes. If there was doubt, do you have an opinion about whether we should certify the question to the California Supreme Court? I don't know what I'm authorized to say is my opinion. I think it is not so open of a question that certification is necessary in light of Becker and the jury instruction, but that is, of course, left to the court's discretion. How long are those taking these days? Do you know? The certifications? I am not aware, but I'm sure it's a long time. I do want to move, however, to the categorical approach, as Judge Berzon was getting to. And even under the categorical approach, the statute here is not overbroad. And I'll start with the easy issue, which is the human consumption element. The defense's argument relies on an incorrect premise, which is that 21 U.S.C. 813A defines what a controlled substance analog is. That's not what Section 813A says. What it says is, if an analog, an analog to the extent it's intended for human consumption, lands on Schedule 1. But there are other schedules that controlled substances are listed on. So all it's saying is that if it's intended for human consumption, it lands on Schedule 1. It doesn't say it's not an analog. The definition of the analog is in Section 802.32, and that definition exactly functionally mirrors California's definition. So they should be interpreted the same way. On the admittedly more complicated issue is the conjunctive versus disjunctive reading of the statute. And, Judge Berzon, you mentioned Hodge as an opinion that you were looking at. There's a twofold problem with Hodge. First, on the absurdity argument. At the time Hodge was decided, the court felt that the only way to prevent the absurdity in that case, the candle wax plus flower combination being an analog, was to interpret the Section 1 to be a conjunctive requirement with 2 or 3. That's no longer true after McFadden v. United States, because now the defendant needs to know of the nature of the substance as a controlled substance analog. And a defendant obviously would know if they're dealing with flower and candle wax, that it will not have a similar effect to an analog. But that's circular. I mean, if the definition would include the wax, then that's all he had to know. In other words, if he had to know there was a controlled substance analog, but a controlled substance analog is defined as A, B, or C, is something that's represented to be an analog, that's all he had to know. I understand what you're saying. I don't read McFadden that way. I read McFadden as requiring knowledge that it acts as a controlled substance. But even if that were not the case, it is the defendant's burden to show a reasonable probability under California law that California would actually prosecute something that would not be an analog under federal law. And they have not cited to a case or a substance that meets that criterion. This is particularly an area where this court should be cautious, because as far as I know, the court- Well, wait a minute. The California statute is either or, but it doesn't have the third category. That's correct. Right? So in some sense, it's narrower, not broader. So what the California statute does is combine section two or three- What does have some language in there about, yes, right. And section one is the same requirement, and it's an either or requirement, as you pointed out. But there's not been a showing of a realistic probability that California would prosecute candle wax and flour as an analog, particularly- But the federal government did. The federal government did in Hodge, and my position is that they would no longer be able to do that under McFadden. So the absurdity that Hodge addressed is no longer present under McFadden. The other problem with applying the absurdity canon is even pre-McFadden, the absurdity canon is meant for exceptional circumstances in which there's a clear drafting error. That's not the whole of the story in Corrie to Hodge, right? It's not, that's sort of the ultimate, that's what was really bothering them because the case seems silly. But the linkage is to a grammatical or observation about the oddity of the way this thing was drafted, so that it could either be and or essentially. And at least the rule of lenity leads you to the conclusion that it's an or. The rule of lenity applies where there's actual uncertainty, but the parallel grammatical reasoning of Hodge is suspect because part of the rationale was that the term which in sections two and three could have an antecedent basis in either the word substance or the word chemical structure. And they said it makes more sense to interpret it as having an antecedent basis in chemical structure. But if that's the antecedent basis, it would be very odd for someone to say the chemical structure of something has a stimulant effect or the chemical structure is something that the person represents to have a stimulant or depressant effect. The better reading of this would be that all three sections are parallel. Section one also includes which, the chemical structure of which. And the antecedent basis, each which links back to substance. Even if the court didn't agree with that argument, there is another narrowing word in section 32a. And that's the word substance. Substance doesn't necessarily need to mean any substance in the world. When we refer to substance abuse, we're referring to harmful substances like drugs or alcohol. So without resorting to twisting the language and adding an and after subsection one and then demoting subsections two and three into alternate elements, instead of doing that tortured reading, the court could simply interpret substance to have a limiting principle on its own. And if it did that, there's a categorical match between California's law and the federal law. And finally, very briefly, I will touch on, this court could also avoid the categorical approach entirely by adjoining six other circuits and interpreting the guideline according to its plain language. But that is something that I may have an opportunity to address in the next case. All right. Thank you. Thank you. Thank you, Honor. I'm not sure that the court has questions. I could just jump in on the intended for human consumption requirement. I heard some skepticism from the court on that. I heard arguments from the government as if that were somehow obvious in the other direction. And I don't... I mean, that one seems subject to the suggestion that do we have any evidence that California would ever prosecute for something that was used for animals? I don't even know what it means exactly. Well, I think it's less whether California would truly prosecute something that's truly not intended for human consumption as opposed to whether that's an element they have to prove. And that is a barrier in federal prosecutions. Federal prosecutors have complained that that makes it harder for them to do these things. And it's a barrier that's there in federal law. It's absent in state law. And just to... This set of provisions that the government's pointing to is creating an intended for human consumption requirement. To me, 11401C3 reads very obviously as a research exemption. It's, you know, the language is before an exemption is specified in paragraph two takes place. But it's before... That's the other oddity. Before it is actually certified as an experiment. So I think I can explain. If you look at paragraph two, that's an exemption for personal... For... Sorry. For investigational use, quote, with respect to a particular person. And then it's saying before that... Before you get that exemption, you've applied... You're a particular person. You're an investigator of, you know, analog like chemical substances. Before you get your... You apply for your exemption. Before you get your exemption, as long as the thing that you're working with is not intended by you for human consumption, you're fine. That's how I read that. I don't think it says anything more than that. And if it... So is this supposed to be protecting animal experimenters? Is that what we're talking about? Not animal. I mean, it could be any kind of chemist who's making... You know, the chemist could be making bath salts that are really bath salts. And they're trying to invent the perfect bath salt. And someone out there might take this bath salt and snort it or smoke it or whatever. But this chemist is just, you know, truly, honestly focused on, you know, the bath salt industry, right? I don't think it needs to be animal experimentation or anything. It's like glue. I mean, people make glue and then other people use it as a drug. Some people make glue. Some people sniff glue.  All right. Thank you, counsel. Thank you very much. We thank both counsel for their arguments. The case just argued is submitted. With that, we'll move to the related case, United States versus Reed, which is also set for 10 minutes.
judges: BERZON, BENNETT, SUNG